IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ADAM J. GARCIA,**

      **Plaintiff,**

vs.                                                             Civ. No.  02-0598 LCS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse or Remand and for a Rehearing, filed December 16, 2002 *(Doc. 11)*.  Plaintiff filed a Memorandum in support of his Motion *(Doc. 12)*; Defendant filed a Response on January 22, 2003 *(Doc. 13)*; and Plaintiff filed his Reply on February 14, 2003 *(Doc. 14).*  The parties have consented to the United States Magistrate Judge conducting all proceedings in this matter, pursuant to 28 U.S.C. §636(c). The Court, having considered the Motion, the memorandum, the response, the reply, the applicable law, and otherwise being fully advised, finds that Plaintiff's Motion is not well-taken and should be **DENIED**.

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff filed an application for supplemental security income payments on June 8, 2000. R. 14.  The claim was denied initially and on reconsideration.

R. 14.  Plaintiff thereafter filed a request for hearing.  Plaintiff and his mother, Yolanda Chaves, appeared and testified at a hearing held on March 20, 2001.  R. 14.  Plaintiff was represented by Catalina Cordoba,[1] a legal assistant.  R. 14.  Plaintiff alleges disability due to a left ventricular aneurysm, a mitral valve prolapse with mild incompetence, and severe chest pains.  R. 15.

## I.  STANDARD OF REVIEW

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *See Shepherd v. Apfel,* 184 F.3d 1196, 1199 (10th Cir. 1999); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the Commissioner." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).  A decision by an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for supplemental security income, a Plaintiff must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the Plaintiff from engaging in substantial gainful activity.  *See Thompson v. Sullivan*, 987 F. 2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423(d)(1)(A)).  At the first four levels of the sequential evaluation process, the Plaintiff must show that he is not engaged in

---

[1] Plaintiff was initially represented by Armando A. Cordoba, a non-attorney, of the Disability Advocacy Clinic. R. 25.  However, after Mr. Cordoba's death, Plaintiff was represented by Catalina Cordoba, a non-attorney, also of the Disability Advocacy Clinic.

substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform works he has done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the Plaintiff is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id*.

## II.  FACTUAL BACKGROUND

Plaintiff is a 23-year old individual filed his application for supplemental security income ("SSI") on June 8, 2002 alleging disability since March 21, 2000. R.63-65, 14. Plaintiff is thus a "younger individual" as defined in the applicable regulations. 20 C.F.R. §416.963(c). Plaintiff attended public school until he left during his freshman year after a fight. R. 33, 35. Plaintiff was thereafter home-schooled, and completed his GED. *Id*.  Plaintiff attended computer classes for one semester thereafter. R. 35.  Plaintiff testified that he had held several jobs including those of cook, hot carrier, and laborer, each of which lasted from a couple of months to a couple of years in duration. *Id*.  While in school, Plaintiff took regular physical education classes and played sports such as soccer, baseball and basketball. R. 38-39.

Plaintiff, who alleges disability due to a left ventricular aneurysm, a mitral valve prolapse, and chest pain, testified at the hearing before the ALJ that when he gets a prolapse, he experiences shortness of breath and chest pain, and sometimes gets lightheaded. R. 15, 36. He testified that he gets prolapses after activities such as feeding his dog or walking around the block. *Id*. Plaintiff testified that he has such prolapses three or four times a week. *Id*. Plaintiff testified that when a prolapse occurs, he must lie down and elevate his feet for two to five hours. R. 36. Plaintiff stated that he occasionally has an irregular heartbeat, has migraine headaches, has anxiety, depression, neck pain, and chest pain. R. 39-40. Plaintiff stated that when he has "bad

days" he can only stand 15 to 30 minutes, sometimes has shaking, has difficulty sleeping, and has backaches. R. 41.   Plaintiff testified that he can lift 20 or 30 pounds. R. 42.   He also stated that he could walk about a block. *Id*.

Plaintiff's mother, Yolanda Chavez, also testified on Plaintiff's behalf at the hearing before the ALJ. Ms. Chavez stated that Plaintiff was "trying to avoid medications to end up with more medications that might give him more effects. So he's just tried to follow the doctor with a good diet, be drinking a lot of fluids, you know, and of course, just resting whenever he starts getting these mitral valve spells." R. 44  Ms. Chavez testified that Plaintiff tries to help around the house and will try mowing the yard. R. 47.

At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity at any time from June 8, 2000, forward. R. 15 (citing 20 C.F.R. § 416.972).  At step two, the ALJ found that Plaintiff's remote aneurysm did not constitute a severe impairment, but found that Plaintiff has had severe impairments consisting of left ventricular dysfunction and chest pain. *Id*. The ALJ found at step three that Plaintiff's impairments did not meet or equal any section in the Listing of Impairments. R. 16.  At step 4, the ALJ found that Plaintiff retained the residual functional capacity fora full range of sedentary work.  Applying the Medical-Vocational Guidelines of Appendix 2 of Subpart P of Part 404 of the Code of Federal Regulations ("the GRIDS"), Rule 201.27, the ALJ noted that as all the criteria of the Medical-Vocational Rule are met, the existence of occupations on the national economy is met by administrative notice. R. 19. Applying Medical-Vocational Rule 201.27, the ALJ found that Plaintiff was "not disabled" and further found that there are jobs existing in substantial numbers in the national economy which the Plaintiff could perform. *Id*.

## II.   ANALYSIS

### A.   Whether the ALJ failed to develop the record.

Plaintiff alleges that the ALJ failed to adequately develop the record in two respects:  first,

that the ALJ failed to provide his analysis as to whether the combination of Plaintiff's impairment met or equalled an impairment listed in 20 C.F. R. Pt. 404, Subpt. P, App. 1, § 40.02.  Plaintiff further alleges that the ALJ failed to place medical interrogatories sent to Dr. Abrams, a cardiologist, in the record; failed to provide copies of the interrogatories to the Plaintiff; and failed to re-contact the medical source or otherwise further the develop the record.

> **1. Whether the ALJ failed to adequately describe his reasoning and the evidence in his Step 3 analysis.**

At step three, the ALJ determines whether the claimant's impairment "is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)(quoting *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir. 1988)). In *Clifton,* the ALJ did not discuss the evidence or his reasons for determining that the claimant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment. *Id*.  In this case, however, the ALJ identified the relevant listing, Section 4.02, and in finding that Plaintiff did not meet his burden of proving that he had met the Listing of Impairments, the ALJ  noted that Dr. Abrams had found that the severity of Plaintiff's heart impairments had come close to, but did not meet the criteria for Section 4.02, congestive heart failure.  (R. at 16).  The ALJ further noted that Plaintiff's representative had not provided any specific medical evidence establishing that the left ventricular damage identified in Dr. Abrams' testing either met or equalled any section in the Listing of Impairments.  *Id*.  In addition, the ALJ discussed Plaintiff's medical record, including  Dr. Abrams' report that the Plaintiff's ECG test continued to show evidence of an old myocardial infarction, Plaintiff's history of chest surgery, and Dr. Abram's medical opinion that the Plaintiff had "atypical" chest pain, but did not have angina. *Id*.  The ALJ thus sufficiently identified the relevant listing and discussed the medical evidence upon which he relied in determining that Plaintiff failed to demonstrate that he met or equalled a listing in the Listing of Impairments. R.

16. *Compare with Clifton*, 79 F.3d at 1009. The ALJ did not fail to adequately describe his reasoning in finding that Plaintiff failed to meet or equal the Listing of Impairments.

Plaintiff further alleges that the ALJ erred in his step three analysis by failing to determine whether Plaintiff's impairments *equalled* one of the listed impairments in 20 C.F.R. Part 4, Subpt. P, App. 1. The ALJ found that Plaintiff has had "severe" impairments consisting of chest pain and left ventricular dysfunction during the time period at issue. (R. at 20). The ALJ also found that "these 'severe' impairments have neither met nor medically equalled one of the listed impairments" in the Listing of Impairments. *Id*. In so making his determination of equivalence, the ALJ identified the medical evidence upon which he relied, including Dr. Abrams' responses to the medical interrogatories, and Plaintiff's prior medical records, and further evaluated such evidence with the arguments of Plaintiff's representative regarding significant left ventricular damage. *See* R. at 16. The ALJ's determination of medical equivalence was thus based on the medical findings that the ALJ identified in Plaintiff's medical records. *See Pucket v. Chater*, 100 F.3d 730, 733-34 (10th Cir. 1996). The ALJ thus adequately described the determination of medical equivalence, as determined by the medical evidence. *See Pucket v. Chater*, 100 F.3d 730, 733-34 (10th Cir. 1996).

        **2.    Whether the ALJ violated Plaintiff's right to due process and failed to develop the record by failing to provide the responses to the interrogatories to Plaintiff's representative and failing to make them a part of the record.**

Plaintiff further alleges that the ALJ failed to adequately develop the record and violated his rights to due process by failing to include a copy of the medical interrogatories in the record and in failing to provide a copy of the interrogatories to Plaintiff's representative.

At the time of the hearing, the ALJ notified Plaintiff's representative that he had marked the case for medical expert interrogatories. Administrative Record, hereinafter "R" 30. The ALJ noted that "Because there's so many presumptions in favor of older claimants versus younger claimants that I felt like some medical explanation of the condition would be helpful. But that's

going to delay the hear – or delay the result for quite some time." R. 31. The ALJ noted that he would ask for a cardiologist and indicated that he thought it would be Jonathan Abrams. R. 31. Plaintiff's representative, responded "Okay . . . Okay, thank you, your Honor." *Id*. At the end of the hearing, the ALJ noted that his decision "will take a while to get out" because the ALJ was going to send some interrogatories to a cardiologist. R. 48. The ALJ noted that Plaintiff's representative would have "the opportunity to look at those before they go out and make any additions or suggestions or corrections." R. 48. The ALJ noted that once the interrogatories were returned, the Plaintiff's representative would have a chance to argue about the answers. *Id*.

By letter dated January 29, 2002, the ALJ provided a copy of the responses to the medical interrogatories from Dr. Abrams dated October 12, 2001 to the Disability Advocacy Clinic, where Plaintiff's original and second representative both worked. R. 123-24. In his letter, the ALJ noted that Plaintiff had the right to take several actions: to submit commence concerning the responses to the interrogatories, to provide a written statement as to the facts and law Plaintiff believed applied to the case in light of that evidence, to provided additional records for the ALJ to consider, to submit written questions to Dr. Abrams, to request a supplemental hearing, to orally questions witnesses including Dr. Abrams, and to request a subpoena for additional witnesses for any supplemental hearing requested. R. 123.

By letter dated February 14, 2002, Plaintiff's representative responded to the additional evidence provided, specifically the medical interrogatories returned by Dr. Abrams. R. 121-22. In her letter, Plaintiff's representative noted that "Dr. Abrams test confirms a significant left ventricular damage and the claimant has significantly decreased functional capacity and would have reduction in his ability to perform physical activity." R. 121. In her letter, the Plaintiff's representative further argued that Plaintiff should be found disabled under the GRID 200.1(h) and requested a wholly favorable decision based on this information. R. 122.

Plaintiff correctly notes that his original representative died between the time of his

hearing and the time that the interrogatories were answered.  However, Plaintiff's second representative specifically noted in her letter to the ALJ that she did review a tape of the hearing before the ALJ and she did review the responses to the medical interrogatories.  R. 121-122.  The ALJ notified the Plaintiff's representative of the opportunity to provide further evidence, to question Dr. Abrams orally or through written questions, to have a supplemental hearing, to subpoena Dr. Abrams and/or additional witnesses for testimony at any such hearing, or to provide a written statement as to the law and facts.  R. 123.  Plaintiff's representative availed herself of this opportunity by providing her February 14, 2002 letter, which included her analysis of the results of Dr. Abrams' test and argument as to the additional evidence.  R. 121-22.  The applicant was provided the opportunity to cross-examine the physician or rebut the report, but chose not to.  As required by *Allison v. Heckler*, Plaintiff was provided the opportunity to subpoena and cross-examine Dr. Abrams, and to offer evidence in rebuttal. *See Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983).  While the responses to the medical interrogatories do not appear in the record, such error is harmless given the fact that Plaintiff was provided the opportunity to review the responses and to provide further information or arguments or additional evidence regarding the same.  R. 123-24.  The letter of Plaintiff's representative providing such argument based on information in the responses to the medical interrogatories does appear in the record, and these arguments were considered by the ALJ in making his decision.  *See* . R. 121-22, 16.  As such, Plaintiff's right to due process was not violated by consideration of the responses to the medical interrogatories by the ALJ after the hearing, nor by the failure of the ALJ to make the responses a part of the record.  *See Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983).

### III.   CONCLUSION

I find that Plaintiff's Motion to Reverse or Remand and for a Rehearing, filed December 16, 2002 *(Doc. 11)* is not well-taken and should be **DENIED**, that the Commissioner's decision be **AFFIRMED**, and that this action be **DISMISSED**.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse or Remand and for a Rehearing, filed December 16, 2002 *(Doc. 11)* is **DENIED.**

**IT IS FURTHER ORDERED** that this matter be **DISMISSED WITH PREJUDICE.**

A Judgment in accordance with this Memorandum Opinion and Order shall be entered forthwith.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**